IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| AUTO-OWNERS MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>COLE COFFIN; WAYNE KERN; DONNA KERN; KERN INVESTMENTS, LLC; and MATTHEW KERN,<br><br>Defendants. | 4:22-cv-00129-SHL-HCA<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** |

Plaintiff issued an insurance policy that excludes coverage for injuries "arising out of the . . . use . . . of any water jet propelled watercraft of any kind less than 16 feet in length." Defendant Cole Coffin ("Coffin") was seriously injured in Missouri while riding on a water jet propelled watercraft of less than 16 feet in length. In a prior ruling, the Court denied Coffin's Motion to Dismiss Plaintiff's Complaint and concluded that the policy language does not impose a duty on Plaintiff to defend or indemnify the insureds in Coffin's underlying state court litigation. Based on the Court's prior ruling, Plaintiff now moves for judgment on the pleadings. The Court stands by its prior analysis as to the scope of insurance coverage and therefore GRANTS Plaintiff's Motion for Judgment on the Pleadings.

I.  **LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018). Therefore, the Court "accept[s] as true all facts pled by the non-moving party and grant[s] all reasonable inferences from the pleadings in favor of the non-moving party." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Cargill, Inc.*, 61 F.4th 615, 619 (8th Cir. 2023). "Judgment on the pleadings is appropriate when there is no material issue of fact and the moving party is entitled to judgment as a matter of law." *Country Preferred Ins. Co. v. Lee*, 918 F.3d 587, 588 (8th Cir. 2019). Further,

declaratory relief is proper: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Alsager v. Dist. Ct. of Polk Cty.*, 518 F.2d 1160, 1163–64 (8th Cir. 1975).

## II. LEGAL ANALYSIS

The parties do not dispute the material facts, which are set forth in detail in the Court's prior Order. *See Auto-Owners Mut. Ins. Co. v. Coffin*, No. 422CV00129SHLHCA, 2022 WL 18777567, at *1–3, 7 (S.D. Iowa Dec. 12, 2022). The only question is whether Plaintiff is entitled to judgment as a matter of law. *Lee*, 918 F.3d at 588. The Court has carefully reviewed Coffin's Resistance to Plaintiff's Motion and concludes that for the most part he has not raised any new arguments for coverage that he did not include in his prior motion to dismiss. (*Compare* ECF 46 *with* ECF 17-1.) The Court stands by its prior analysis rejecting those arguments and will not rehash the analysis in its entirety here. Instead, the Court will simply address a few points raised in Coffin's most recent filings. Familiarity with the Court's prior ruling is presumed.

### A. The Word "Use" Is Not Ambiguous.

Coffin goes somewhat further than he did in earlier briefing to try to support his argument that Exclusion (6) to the Policy—which excludes coverage for bodily injury "because of or arising out of the . . . use . . . of [a jet-ski]"—does not apply to the "use" of a jet-ski by a non-insured. Coffin argues that the Court erred in distinguishing *Braxton v. United States Fire Insurance Co.*, 651 S.W.2d 616 (Mo. Ct. App. 1983). He asserts that the Missouri Supreme Court and a federal court applying Missouri law affirmed *Braxton*'s conclusion that the word "use" is ambiguous in *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814–15 (Mo. banc 1997) and *Cawthon v. State Farm Fire & Cas. Co.*, 965 F. Supp. 1262, 1267 (W.D. Mo. 1997), respectively.

Coffin's position does not withstand scrutiny. *Cawthon* involved an insured who tried to remove an embedded tree limb from his yard by tying one end of a rope to the embedded limb, wrapping the rope around a different nearby tree, and tying the other end of the rope to the hitch of his pick-up truck, which he then began driving forward. 965 F. Supp. at 1263. The force of the truck's forward movement uprooted the limb so aggressively that it "catapulted" forward and struck the insured's grandson, who later died from his injuries. *Id*. The dispute revolved around the interpretation of a policy exclusion for injuries "arising out of the . . . use . . . of a motor vehicle." *Id*. at 1264. *Cawthon* aptly noted that the proper application of the words "use" and

"arising out of" is challenging in the "myriad of legal and factual constructs in insurance disputes." *Id*. at 1265. The court explained:

> At one end of the factual spectrum is the automobile being operated on a public highway causing damage as a result of a collision with an object or a person. At the other end of the spectrum are injuries occurring adjacent to the vehicle or connected to it by the thinnest of evidentiary threads, *i.e.,* the vehicle was merely used to bring the participants to the place where liability occurred.

*Id. Cawthon* concluded, in the unique circumstances presented, that coverage existed either because: (a) the word "use" is capable of multiple meanings when a vehicle is only tangentially related to the injury; or (b) even if "use" is unambiguous, the proximate cause of the injury was not the use of the truck, but rather the use of the *rope*, with the truck being "remote in the chain of causation." *Id.* at 1267–68.

*Cawthon* is fully consistent with this Court's conclusion that the word "use" is not ambiguous in the context of the jet-ski accident that injured Coffin. Indeed, *Cawthon* recognized that the meaning of the word "use" is clear in some circumstances, such as when a vehicle is "being operated on a public highway causing damage as a result of a collision with an object or a person." *Id.* at 1265. This is one of those clear-cut cases, except that the vehicle is a jet-ski and the accident site is a public lake, not a public highway. It is not a situation where the injuries relate only tangentially to the use of the jet-ski, as would be the case if, say, Coffin had been randomly shot while riding on the jet-ski or injured while it was being used in an unconventional way to help with a construction project (to borrow two examples discussed in *Cawthon*). *See Steelman v. Holford*, 765 S.W.2d 372 (Mo. Ct. App. 1989) (refusing to exclude coverage for injuries from random shooting that happened to occur while claimant was in his vehicle); *Lawver v. Boling*, 238 N.W.2d 514 (Wis. 1976) (refusing to exclude coverage for accident caused by insured's use of truck to hoist his son in the air to attach boards to the side of a barn). Thus, properly understood, *Cawthon* does not call this Court's analysis into doubt. *See also Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 344 (Mo. Ct. App. 2000) (declining to interpret *Braxton* to mean there is always ambiguity with respect to coverage for acts by third parties); *Capitol Indem. Corp. v. 1405 Assocs., Inc.*, 340 F.3d 547, 550 (8th Cir. 2003) (Missouri law) (recognizing that the phrase "arising out of" is "very broad, general and comprehensive" as used in insurance policy exclusions).

The Missouri Supreme Court's reasoning in *Gulf Ins.* is likewise consistent with this Court's analysis. Contrary to Coffin's suggestion, *Gulf Ins.* did not hold that the word "use" in a

3

policy like the one at issue here is ambiguous. Rather, *Gulf Ins.* stated that language excluding coverage for injuries "arising out of the . . . use . . . of any 'auto'" is generally "**not** ambiguous" in and of itself. 936 S.W.2d at 813, 815 (emphasis added) (discussing *Killian v. State Farm Fire & Cas. Co.*, 903 S.W.2d 215 (Mo. Ct. App. 1995) and *Am. States Ins. Co. v. Porterfield*, 844 S.W.2d 13 (Mo. Ct. App. 1992)). Ambiguity existed in *Gulf Ins.* solely because there was a separate endorsement providing coverage for "special events," which the policy said was "[s]ubject otherwise to all the terms, limits and conditions of the Policy." *Id*. at 813. The Missouri Supreme Court held that the odd syntax of the phrase "subject **otherwise** to" created ambiguity when compared with other policy provisions using the more conventional phrase "subject to"; meaning: the separate endorsement arguably created coverage for injuries arising out of "special events" even if they involved the "use . . . of any 'auto.'" *Id*. at 814. The Court then resolved this ambiguity in favor of the insured. *Id.*

*Gulf Ins.* would only help Coffin if he could find some other provision of the Policy that throws the meaning of the word "use" in Exclusion (6) into question. He tries to use Exclusion (9) to do so, but his argument remains unpersuasive. Exclusion (9) states, in relevant part, that there is no coverage for injuries arising out of "(a) the entrustment to any person by any insured; nor (b) the supervision of any person by any insured; with regard to the . . . use . . . of a[] . . . watercraft." (ECF 24, pp. 34–35.) Coffin claims that Exclusion (9) "supplemented" the word "use" to include negligent entrustment and negligent supervision theories of recovery, and thus the word "use" as found in Exclusion (6) must *not* include those theories of recovery.

The Court disagrees. The word "use" is just as broad in Exclusion (6) as it is in Exclusion (9). The difference between the two is that Exclusion (9), by its plain language, is meant to emphasize that an insured cannot avoid the broad scope of Exclusion (6) by using "upstream liability" theories like negligent entrustment or supervision. In other words, Exclusion (9) is intended to reinforce Exclusion (6), not undermine it. Nothing about this creates ambiguity. *See In re SRC Holding Corp.*, 545 F.3d 661, 670 (8th Cir. 2008) ("Nothing prevents the parties from using a 'belt and suspenders' approach in drafting the exclusions, in order to be 'doubly sure.'").

The presence of Exclusion (9) in the Policy here does not make it analogous to the policy in *Gulf Ins.*, which involved two provisions working in competing directions, one excluding coverage for injuries arising out of the use of a vehicle and the other providing coverage for "special events." Exclusions (6) and (9), by contrast, work in the <u>same</u> direction: they both exclude

coverage. The interplay between Exclusions (6) and (9) therefore simply confirms the parties' intent to have the exclusion for use of a jet-ski interpreted broadly, consistent with cases like *Killian* and *Porterfield*. As the ongoing viability of those cases was recognized by *Gulf Ins.* and reinforced (as to *Porterfield*) in a more recent Missouri Supreme Court decision, the Court remains confident it has correctly applied Missouri law. *See Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 348 (Mo. 2015) (relying on *Porterfield* to conclude coverage did not exist).[1]

    B.  *The Court Has Not Conflated Covering Language with Exclusions.*

Coffin next argues that the Court's prior ruling conflates covering language (which is typically interpreted broadly, but with the claimant bearing the burden of proof) with exclusions (which are typically interpreted narrowly, and with the insurer bearing the burden of proof). His argument, although clever, is so intricate and complicated that it proves the unnatural reading he is trying to give the Policy.

As with his other arguments, Coffin's discussion of "covering language" and "exclusions" is meant to address Exclusion (6)'s statement that coverage does not exist for injuries "arising out of the . . . use . . . of any water jet propelled watercraft of any kind less than 16 feet in length." At the risk of stating the obvious, Exclusion (6) creates a serious problem for Coffin because it: (i) is clearly geared toward jet-skis like the one he was riding at the time of the accident; and (ii) uses the "arising out of" language that courts applying Missouri law interpret broadly. *See Capitol Indem. Corp.*, 340 F.3d at 550. In the face of Exclusion (6), the language of which is unambiguous when considered alone, Coffin has no choice but to fly-speck the remainder of the Policy in search of some arguable basis for injecting ambiguity.

In both prior and current briefing, Coffin tries to get there through the interplay between Coverage E – Personal Liability, Exclusion (6), Exclusion (9), and Exclusion (a) to Exclusion (9)—i.e., an "exclusion to the exclusion." Specifically, Coffin uses the following syllogism:

(i)   Coverage E – Personal Liability provides coverage for damages "arising out of the . . . use . . . of . . . 5) a watercraft . . .," which, by its plain language, means there is coverage for his accident;

(ii)   Exclusion (6) excludes coverage for injuries "arising out of the . . . use . . . of any [jet-ski]," which, he admits, appears at first glance to mean his accident

---

[1] Coffin incorrectly argues that *Porterfield* has been "rejected by the Missouri Supreme Court." (ECF 46, p. 13.) *Porterfield* was the only case *Taylor v. Bar Plan Mutual Insurance Co.* cited to support the conclusion that the concurrent proximate cause doctrine did not provide coverage. 457 S.W.3d at 348. As *Taylor* was decided far more recently than *Gulf Ins.*, the latter clearly did not "reject" *Porterfield*.

5

       is excluded after all—but only because of the exclusion, not because the accident was outside the scope of coverage in the first place;

(iii) Exclusion (9) excludes coverage for injuries "arising out of: (a) the entrustment to any person by any insured; nor (b) the supervision of any person by any insured; with regard to the . . . use . . . of a[] . . . watercraft," which, he appears to admit, is directed toward negligent entrustment and supervision theories like those he is trying to use here; *except that*

(iv) Exclusion (a) to Exclusion (9) states that it does not apply to "watercraft that are covered by Coverage E – Personal Liability," which, he argues, "revives" the coverage provided in the first step of the syllogism as least as to negligent entrustment and supervision theories.

In its earlier ruling, the Court rejected this syllogism, stating: "Coffin's argument fails because the Court has already concluded, under Exclusion (6), that the jet ski is not 'covered by Coverage E' even when it is being used by a third party." *Coffin*, 2022 WL 18777567, at *12. The Court provided its own, alternative syllogism to summarize what it continues to believe is the correct interpretation of the Policy:

(i) most watercraft are covered (Coverage E.1.a.(1));

(ii) jet skis are not covered (Exclusion (6));

(iii) injured parties cannot use theories of negligent entrustment or supervision to overcome the fact that jet skis are not covered (Exclusion (9)); but

(iv) injured parties <u>can</u> use theories of negligent entrustment or supervision with respect to watercraft that are covered (Exclusion (9), exclusion to the exclusion).

*Id.* at *12–13.

       In his most recent filing, Coffin argues the Court improperly conflated covering language with exclusions when it said the "jet ski is not 'covered by Coverage E.'" He argues that, when interpreting Exclusion (a) to Exclusion (9), the determination of what is "covered by Coverage E – Personal Liability" must be based solely on what Coverage E covers in the first instance, not how that Coverage is later limited through Exclusions.

       It is Coffin, not the Court, who has "conflated" two different concepts. It is true, under Missouri law, that different interpretive standards apply when evaluating the scope of "coverage" vis-à-vis the scope of an "exclusion." The former is interpreted broadly, but with the burden on the insured. *See Harrison v. Tomes*, 956 S.W.2d 268, 270 (Mo. 1997) (en banc); *State Farm Fire & Cas. Co. v. D.T.S.*, 867 S.W.2d 642, 644 (Mo. Ct. App. 1993). The latter is interpreted narrowly, and with the burden on the insurer. *See Harrison*, 956 S.W.2d at 270; *D.T.S.*, 867 S.W.2d at 644.

6

This does not mean, however, that any discussion of "Coverage" in an insurance contract refers only to the scope of initial coverage without regard to later "Exclusions." Indeed, such a fragmented approach to interpreting an insurance contract would violate well-established Missouri law. *See Floyd-Tunell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 217 (Mo. 2014) (en banc) ("The entire policy and not just isolated provisions must be considered."); *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009) (en banc) ("Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole."). Moreover, and in any event, the Exclusions section of the Policy here contains the following prefatory language: "**Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply. . .[to enumerated Exclusions]." This language shows that, regardless of the facial breadth of the language in Coverage E – Personal Liability, coverage "do[es] not apply" in certain situations, including, as relevant here, to injuries "arising out of the . . . use . . . of [a jet-ski]." It follows that the Court did not "conflate" coverage language with exclusions when it relied on Exclusion (6) to conclude the jet-ski is "not 'covered by Coverage E.'" Instead, it simply considered the Coverage *and* Exclusions together—i.e., it interpreted "[t]he entiry policy and not just isolated provisions"—to determine what was "covered by Coverage E." *See Floyd-Tunell*, 439 S.W.3d at 217.

Similarly, the Court did not "wr[i]te out an entire provision of the Policy" when it rejected Coffin's attempt to rely on Exclusion (a) to Exclusion (9) as a basis for establishing coverage. (ECF 46, p. 9.) To the contrary, Exclusion (a) serves exactly the purpose the Court said in its earlier ruling: to confirm that if an insured causes an injury by negligently entrusting a watercraft other than a jet ski to someone (or through negligent supervision of the same), the injury is covered by the Policy, notwithstanding Exclusion (9). *Coffin*, 2022 WL 18777567, at *13. But for Exclusion (a), negligent entrustment and supervision theories would not give rise to coverage for injuries arising out of non-jet-ski watercrafts because Exclusion (9), on its face, applies without exception to injuries arising out of the use of a "watercraft." Exclusion (a) therefore preserves the distinction recognized elsewhere in the Policy between jet skis (not covered) and other types of watercrafts (covered). This distinction is crucial here and defeats Coffin's attempt to establish coverage for the injuries he suffered while riding on the jet ski.

*C. Coffin's Concurrent Proximate Cause Theory Fails.*

Most of Coffin's remaining arguments focus on the Court's rejection of his "concurrent proximate cause" theory of coverage. The Court stands by its earlier analysis of that issue but will make two additional observations.

First, Coffin is correct that there is a line of Missouri Court of Appeals cases broadly applying the concurrent proximate cause doctrine to allow theories like negligent entrustment and supervision (or similar theories) to overcome policy exclusions. (*See generally* ECF 46, p. 17.) Here, if one ignores Exclusion (9)—which, of course, one cannot do—these cases would provide some level of support for Coffin's attempt to use failure to warn and negligent entrustment and supervision theories to overcome Exclusion (6). The problem for Coffin, however, is that there is a separate line of Missouri Court of Appeals cases rejecting the broad formulation of the concurrent proximate cause doctrine, and the Missouri Supreme Court's decision in *Taylor* is best understood as following that separate line of cases. Relatedly, but even more importantly, the Eighth Circuit has interpreted *Taylor* as having "appeared to favor a narrow application of the [concurrent proximate cause] doctrine." *Great Lakes Ins. SE v. Andrews*, 33 F.4th 1005, 1011 (8th Cir. 2022); *see also Conner v. Scaglione*, No. 4:21-CV-385-SPM, 2021 WL 4739434, at *7 (E.D. Mo. Oct. 12, 2021) (applying narrow approach). Thus, the Court must continue to reject Coffin's arguments not just because of the Court's own independent interpretation of Missouri Supreme Court precedent, but also because of the Eighth Circuit's interpretation of that same precedent. As to the latter, while the Missouri Supreme Court of course has the final say on matters of Missouri law, this Court is nonetheless obligated to follow on-point Eighth Circuit precedent interpreting Missouri law. The Court has done so here.

Second, Coffin's most recent filing tries to bolster his concurrent proximate cause theory by relying on the prefatory language to Coverage E, which defines "occurrence" as a "continuous or repeated exposure to substantially the same generally harmful conditions." He argues that this provides an additional source of upstream liability coverage that is not impacted by Exclusions (6) and (9). (ECF 46, pp. 15–16.) Coffin provides no caselaw support for this argument, nor is the Court able to find any. To the contrary, courts have rejected concurrent proximate cause theories in similar cases containing policies with identical prefatory language. *See, e.g.*, *Integon Nat'l Ins. Co. v. Reece*, 423 F. Supp. 3d 831, 835–37, 846 (E.D. Cal. 2019) (rejecting insured's argument that negligent entrustment and supervision of golf cart to niece constituted a concurrent proximate

cause of golf cart accident despite policy covering "occurrences" which was defined to include "continuous or repeated exposure to substantially the same general harmful conditions"), *aff'd*, 831 F. App'x 274 (9th Cir. 2020); *see also Herbst v. The Standard Fire Ins. Co.*, No. 4:23CV201 RHH, 2023 WL 3055318, at *3 (E.D. Mo. Apr. 24, 2023) (interpreting exclusion for injuries "arising out of the . . . use of any auto" broadly). It likewise does not matter, as Coffin now suggests (ECF 46, p. 7), that he was not driving the jet ski. *See Poage v. State Farm Fire & Cas. Co.*, 203 S.W.3d 781, 784 (Mo. Ct. App. 2006) ("While a person who operates a vehicle obviously uses it, one can use a vehicle without operating it.").

### D. Coffin's Barebones Affirmative Defenses Do Not Save Him from Judgment on the Pleadings.

Coffin's final argument is that he has raised fact-based affirmative defenses, and thus judgment on the pleadings is inappropriate. (ECF 46, pp. 18–19.) It is true that affirmative defenses may create a "material issue of fact" that precludes judgment on the pleadings in some circumstances. *See Dinosaur Merch. Bank Ltd. v. Bancservices Int'l LLC*, No. 1:19 CV 84 ACL, 2019 WL 6683157, at *9 (E.D. Mo. Dec. 6, 2019), *on reconsideration in part*, No. 1:19 CV 84 ACL, 2020 WL 95662 (E.D. Mo. Jan. 8, 2020). Here, however, no such circumstances exist on the pleadings in their current form.

Coffin argues, for example, that "[t]he facts giving rise to these affirmative defenses need not be detailed here." (ECF 46, p. 18.) This is incorrect: in *National Union Fire Insurance Co. of Pittsburgh v. Cargill*, the Eighth Circuit held that more than a "generic reservation of the right to assert affirmative defenses" is needed to "save [a] suit from judgment on the pleadings." 61 F.4th at 620. In fact, *Cargill* appears to have answered a question that this Court (and many other district courts in the Eighth Circuit) have been pondering for years: whether the heightened pleading standard recognized in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) applies to affirmative defenses. *See generally Hull Partners, LLC v. Clean Fuels All. Am.*, No. 4:22-CV-00040-SHL-HCA, 2022 WL 17369718, at *14–15 (S.D. Iowa Nov. 21, 2022). *Cargill* appears to have concluded that the answer is "yes," at least when a motion for judgment on the pleadings has been filed. 61 F.4th at 620. Here, Coffin's pleading clearly does not satisfy *Twombly* or *Iqbal*; instead, it asserts barebones affirmative defenses, often couched with conditional language. (E.g., ECF 37, p. 17 ("To the extent Plaintiff has waived its right to enforce any contractual provision, it may not recover thereby.").) To avoid judgment on the pleadings, *Cargill* requires more.

The letter attached to Coffin's resistance to Plaintiff's motion for judgment on the pleadings (ECF 47) does not change this conclusion. If Coffin wants to use the letter to support his affirmative defenses, he needs to move for leave to amend his pleading to add relevant facts to help the Court understand why it might preclude judgment in Plaintiff's favor. *See Cargill*, 61 F.4th at 619 (refusing to consider putative facts that "are not alleged or reasonably inferable from the pleadings"). Alternatively, he should authenticate the document and provide surrounding context in the manner contemplated by Fed. R. Civ. P. 12(d) and Fed. R. Civ. P. 56. As the record currently stands, he has done neither, and thus the Court will not take the letter into account.

Nothing in *Crutcher v. MultiPlan, Inc.* is to the contrary. In *Crutcher*, the defendant asserted affirmative defenses of waiver and modification and incorporated by reference "all allegations and averments made in previously-filed summary judgment pleadings." 22 F.4th 756, 766 (8th Cir. 2022). *Crutcher* held that this was enough to put the plaintiffs on notice of the affirmative defenses. It did not, however, hold that barebones recitation of affirmative defenses is enough in and of itself to withstand a motion for judgment on the pleadings. *Id*. Instead, *Cargill* governs that question and requires more than what Coffin has done here. 61 F.4th at 619–20.

In any event, Coffin is not an insured on the Policy and has not explained why Plaintiff's correspondence with *him* in response to a settlement demand could give rise to affirmative defenses of waiver, estoppel, or similar theories as to coverage. Presumably, any such defenses, if viable at all, would belong to the insureds—i.e., the other Defendants. *See Lexington Ins. Co. v. Integrity Land Title Co.*, 852 F. Supp. 2d 1119, 1137 (E.D. Mo. 2012) ("The general rule is that an injured party cannot proceed in a direct action against an insurance company providing liability for an insured who allegedly caused the harm sustained by the claimant." (quoting *Grisamore v. State Farm Mut. Auto. Ins. Co.*, 306 S.W.3d 570, 574 (Mo. Ct. App. 2010))). But none of those Defendants have raised those (or any other) affirmative defenses. (ECF 36.) Coffin's position therefore fails on both procedural and substantive grounds.

### III.   CONCLUSION

The Court previously concluded that the plain language of the Policy precludes coverage for the injuries suffered by Coffin while riding on the jet ski. Nothing in the latest round of briefing changes that conclusion. The Court therefore GRANTS Plaintiff's Motion for Judgment on the Pleadings (ECF 45) and directs the Clerk of Court to enter judgment for Plaintiff.

IT IS SO ORDERED.

Dated: May 1, 2023

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE